# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FRANK J. RICHARD,

     Plaintiff,

v.

PAUL KLEE, *Warden*,

     Defendant.

Case No. 2:16-cv-11831-LJM-PTM
Honorable Laurie J. Michelson

---

## OPINION AND ORDER
## DENYING PETITION FOR A WRIT OF HABEAS CORPUS [1, 10]

---

Around 1:00 a.m. on June 23, 2009, two police officers, Daniel Main and Scott McDonald, responded to a 911 call. When they arrived on scene, a rooming house in Pontiac, Michigan, Main saw a dead body out front. Then Main saw Frank Richard walk out of the rooming house. Richard was covered in blood. Main handcuffed Richard and "asked him if there was anyone else inside the apartment. After [Richard] responded affirmatively, the officers asked [him] if this person was responsible for the victim's death, and [Richard] said 'No. I stabbed him.' [Richard] then gave the police multiple conflicting versions of what transpired." *People v. Richard*, No. 300469, 2012 WL 832807, at *1 (Mich. Ct. App. Mar. 13, 2012). The body was identified as Andre Betty.

The State of Michigan charged Richard with open murder (in Michigan, the prosecutor need not specify first degree, second degree, or manslaughter). Prior to trial, Richard attempted to suppress the statements he had made to Main and McDonald when he was arrested. His motion was denied. At trial, Richard argued self-defense (a defense which Richard claims was necessitated by the denial of his motion to suppress). Richard presented evidence that both he and Betty were heavily intoxicated. (The autopsy revealed that Betty had consumed about 15 drinks and Richard

testified to having consumed a similar amount of alcohol.) Under Richard's account, Betty tried to attack or stab him while the two were in the rooming house and so, in defense, Richard stabbed Betty. But the jury also heard Main and McDonald's testimony that, at the time of his arrest, Richard had given various accounts about what had happened, only some of which involved self-defense. And the jury heard that not long before Betty's death, Richard had called Betty a racial slur and said he was going to kill Betty because Betty was a crack dealer. In the end, the jury convicted Richard of second-degree murder. Richard was sentenced to a minimum of 25 years in state prison.

Richard appealed but without success. *See People v. Richard*, No. 300469, 2012 WL 832807 (Mich. Ct. App. Mar. 13, 2012); *People v. Richard*, 817 N.W.2d 106 (Mich. 2012). Richard also sought post-conviction relief in state court, but that too was unsuccessful.

Richard now seeks a writ of habeas corpus from a federal court. (ECF No. 1, 10.) As will be explained in detail below, some of Richard's claims for the writ are not exhausted and are defaulted. Others are barred by 28 U.S.C. § 2254(d) because the Michigan Court of Appeals reached the merits of the claims and the state appellate court's decision did not involve an unreasonable application of Supreme Court precedent. Finally, to the extent that Richard properly presented claims to the Michigan Court of Appeals that the state court did not address, this Court finds that those claims do not warrant habeas corpus relief. So Richard's request for a writ will be denied.

## I.

The Court first considers five of Richard's claims for a writ of habeas corpus that are not exhausted. *One*. Richard says trial counsel failed to adequately investigate the prosecution's witnesses, including Robert Walker. (ECF No. 10, Br. in Supp. at 13.) *Two*. Richard says that trial

counsel failed to challenge the prosecution's reference to or use of his psychological evaluation. (ECF No. 10, Br. in Supp. at 14.) *Three*. Richard asserts ineffective assistance of appellate counsel. (ECF No. 10, Br. in Supp. at 15.) *Four*. Claim IV of Richard's petition (which is labeled Claim III in his original petition (ECF No. 1)) asserts that the prosecution's reference to or use of his psychological evaluation violated patient-doctor privilege and the Confrontation Clause (ECF No. 10, Br. in Supp. at 24–25.) *Five.* Richard asserts that the prosecutor violated his rights under *Doyle v. Ohio*, 426 U.S. 610 (1976), by asserting that trial was the "first time" Richard said he was in a fight and needed to defend himself. (ECF No. 10, Br. in Supp. at 26.)

These five claims were not exhausted via direct appeal. (*See generally* ECF No. 14, PageID.530–555.) True, in his brief to the Michigan Court of Appeals, Richard raised an ineffective-assistance-of-trial-counsel claim and generally asserted that trial counsel had not "properly investigate[d] his case." But there is no claim that trial counsel should have researched Walker in greater detail or that trial counsel should have sought adjournment because the prosecution disclosed Walker only 10 days before trial. (*See* ECF No. 14, PageID.540–541.) Nor is there any claim about the prosecution's use of Richard's psychological report, trial counsel's failure to object to that use, or the prosecution's "first time" reference. (*See generally* ECF No. 14, PageID.530–555.) And, obviously, appellate counsel did not assert that she was ineffective. Because these five claims were not presented to the Michigan Court of Appeals, and because the Michigan Supreme Court did not grant Richard leave to appeal, *People v. Richard*, 817 N.W.2d 106 (Mich. 2012), Richard did not exhaust these claims on direct appeal. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity' [to correct alleged violations of its prisoners' federal rights] the prisoner must 'fairly present' his claim *in each*

appropriate state court[.]" (emphasis added)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (similar); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (similar).

So that means that the only way the five claims identified above could have been exhausted is if Richard exhausted them via a motion for relief from judgment and associated appeals. But that too is not the case. Having reviewed the Rule 5 materials and all the state court dockets (available online), Richard did not appeal the denial of his first motion for relief from judgment. And while Richard filed a second motion for relief from judgment, the state trial court found that it did not "fit within any of the exceptions in" Michigan Court Rule 6.502(G). That rule provides that, with two exceptions, "one and only one motion for relief from judgment may be *filed* with regard to a conviction." Mich. Ct. R. 6.502(G)(1) (emphasis added). Thus, the state trial court found that Richard's second motion for relief from judgment was procedurally improper. Richard sought leave to appeal that ruling, but the Michigan Court of Appeals and Michigan Supreme Court also thought that 6.502(G) barred the second motion. (ECF No. 14, PageID.622); *People v. Richard*, 886 N.W.2d 890 (Mich. 2016). In short, Richard did not appeal his first motion for relief from judgment and his second motion for relief from judgment was procedurally improper, *see Castille v. Peoples*, 489 U.S. 346, 351 (1989); so whatever claims Richard presented in those two motions were not exhausted.

Thus, Richard's claims about counsel's failure to investigate prosecution witnesses (including Walker), about the prosecution's use of his psychological report and his counsel's response to it, about the prosecution's "first time" reference, and about his appellate counsel are all not exhausted. The question thus becomes what to do with Richard's mixed habeas corpus petition.

One possibility would be to let Richard go exhaust these claims. *See Rhines v. Weber*, 544 U.S. 269 (2005). But, as noted, Michigan Court Rule 6.502(G) generally permits only one motion for relief from judgment. And the two limited exceptions do not apply here. Nothing suggests that Richard's claims are based on "new evidence that was not discovered before" Richard's first motion for relief from judgment. Mich. Ct. R. 6.502(G)(2). Richard does have a 2015 affidavit, which was after his first motion for relief from judgment; but the affidavit is his own and its content strongly suggests that Richard could have made the same allegations when he filed his first motion for relief from judgment. (ECF No. 14, PageID.488–489, 501.) Nor are the five unexhausted claims "based on a retroactive change in law that occurred after the first motion for relief from judgment." Mich. Ct. R. 6.502(G)(2). So the five unexhausted claims are not now exhaustible. That means they are procedurally defaulted.

And a federal court can only address defaulted claims on the merits if there is a way around the procedural bar. That would be true if Richard shows "cause for the default and prejudice resulting therefrom, or that failing to review the claim[s] would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 805–06 (6th Cir. 2006). But Richard has not made, and quite likely cannot make, the required showing.

As for the cause-and-prejudice route, Richard might be able to show that appellate counsel was ineffective for failing to raise four of the five unexhausted claims. But even assuming so, Richard has not explained why he could not have exhausted all five claims himself via motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x 781, 784 (6th Cir. 2007). Indeed, it appears that Richard eventually presented some if not all five of these claims at some point during the collateral review process. The problem is that Richard did not present all five claims in his first

motion for relief from judgment and then seek leave to appeal the denial of that motion from both the Michigan Court of Appeals and the Michigan Supreme Court.

As for the fundamental-miscarriage-of-justice exception, Richard would have to "present new reliable evidence showing that he is actually innocent." *Dufresne v. Palmer*, 876 F.3d 248, 256 (6th Cir. 2017). Richard has not identified any such evidence and the Court's review of the record has not uncovered any.

## II.

The Court now turns to the claims that Richard did exhaust (or, at least, are arguably exhausted).

## A.

Richard claims that the admission of his statements to the arresting officers violated his Fifth Amendment rights.

To better understand this claim, additional factual background is necessary.

Prior to trial, Richard's counsel moved to suppress Richard's statements to the police. At the evidentiary hearing on the motion (commonly referred to as a *Walker* hearing in Michigan courts), three police officers and Richard testified.

Officer Daniel Main testified that when he arrived on scene, he saw the victim, Betty, lying on the stairs leading to the rooming house. (ECF No. 14, PageID.251.) Main then saw Richard walk out front of the rooming house with "his hands and feet . . . covered in blood." (*Id.*) Main handcuffed Richard. (*Id.*) Main then asked Richard if there was anyone else inside. (*Id.*) And, according to Main, this exchange occurred: "we asked him who did this. . . . He said I stabbed him." (*Id.*)

Officer Scott McDonald's testimony at the *Walker* hearing was a bit different. According to McDonald, when Richard was first asked if there was anyone else inside, "[Richard] responded by saying there's another black guy in there. . . . He was asked if [that guy] was the one who had done this and he said yes." (ECF No. 14, PageID.262.) But then, said McDonald, Richard gave two other accounts. McDonald recalled that Richard gave a "second story" that Betty had attacked him and that he had defended himself. (*Id.*) McDonald added, "[t]he third story was that there was another black man who had come in and stabbed [Betty] after calling [Betty] a snitch." (*Id.*) McDonald testified that after speaking with Richard, he and Main went into the apartment where the victim had been stabbed while a third officer ("Mickens") stayed with Richard out front. (ECF No. 14, PageID.281.) After clearing the apartment, McDonald and Main went back outside where, according to McDonald, Richard began making more statements. (ECF No. 14, PageID.263.) McDonald told the trial judge the following: "after . . . checking [the] apartment and coming back out [Richard] had started to make some more statements about the knife and things of that sort when I realized he was incriminating himself I advised him of his *Miranda* rights." (ECF No. 14, PageID.263.)

Richard also testified at the *Walker* hearing. He said that he had drunk a "fifth" of 100 proof bourbon. (ECF No. 14, PageID.302.) (That is the equivalent of about 16 shots.) Richard did not recall being Mirandized by McDonald on the front porch. In fact, Richard testified, "I was advised of *Miranda* like two hours after I was handcuffed." (ECF No. 14, PageID.305.)

The trial court heard still other evidence. Richard's 911 call was played and counsel argued that, due to intoxication, Richard's "words [were] all stuck together." (ECF No. 14, PageID.306.) Apparently on the 911 call, Richard also mistakenly referred to one of his tenants, Xavier Garcia, as "Mike" and mistakenly stated that Betty was Hispanic when, in fact, Betty is African-American.

This, says Richard, further shows he was heavily intoxicated. Finally, Richard's counsel called an officer who saw Richard at the station well after his arrest. This officer testified, "[Richard] appeared to be very aggressive—not appear. He was very aggressive and shouting [obscenities], things like that. . . . It appeared to me [that he had] been drinking so I just said I'm not going to try to sit down and have a formal meeting or a formal interview with you tonight." (ECF No. 14, PageID.268.)

Having heard the testimony, the trial court declined to suppress Richard's statements to Main and McDonald.

At trial, Main, McDonald, and Richard again testified about what was said during the arrest. McDonald's direct testimony differed somewhat from what he said at the *Walker* hearing; but on cross, he agreed with his earlier account. (*Compare* ECF No. 14, PageID.355, *with* ECF No. 14, PageID.360–361.) In particular, McDonald told the jury that Richard had stated, "I stabbed him. [The victim] came at me with a knife." (ECF No. 14, PageID.360.) As for the other arresting officer, Main's testimony largely matched the testimony he gave at the *Walker* hearing. (ECF No. 14, PageID.369, 371–372.) As did Richard's. (ECF No. 14, PageID.400–402.)

With that background, Richard's claim of constitutional error can be better understood. He asserts that he was handcuffed and thus was in custody when he made the initial statements. (ECF No. 10, Br. in Supp. at 20.) And, says Richard, because he was not given his *Miranda* rights before making those initial statements, their introduction at trial violated his Fifth Amendment rights. (ECF No. 10, Br. in Supp. at 20–21.) Richard appears to argue that his extreme intoxication prevented him from knowingly and voluntarily waiving his right to remain silent and to counsel. (*See* ECF No. 10, Br. in Supp. at 23.) So Richard also claims that the trial court should have suppressed any statements he made after he was Mirandized.

The Michigan Court of Appeals addressed this claim. It stated the following:

Here, defendant claims that the trial court erred by admitting his statements to the officers because defendant was too intoxicated to understand his *Miranda* rights. However, while "[i]ntoxication from alcohol . . . can affect the validity of a waiver of Fifth Amendment rights . . . [it] is not dispositive." And, importantly, here, at the *Walker* hearing on defendant's motion to suppress his statements to the police officers, defendant testified that the police advised him of his *Miranda* rights and that he fully understood those rights. Thus, the prosecution clearly presented "evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." Accordingly, defendant has failed to show that the trial court erred in denying his motion to suppress his statements to the police officers.

Defendant asserts that the trial court erred in admitting the statements he made to the police before he was Mirandized. However, defendant did not properly present this claim for appeal because he failed to raise it in the statement of questions presented in his appellate brief. Moreover, we find that this claim lacks merit because defendant's un-Mirandized statements were made in response to the officer's questions asked for safety reasons and, thus, fell under the public safety exception to the *Miranda* rule. *See People v. Attebury*, 463 Mich. 662, 668–674; 624 NW2d 912 (2001) (holding that *Miranda* does not apply where "the police inquiry . . . [was] necessary to protect the police or the public from an immediate danger").

*People v. Richard*, No. 300469, 2012 WL 832807, at *3 (Mich. Ct. App. Mar. 13, 2012) (internal citations omitted.)

This was an "on the merits" determination of Richard's Fifth Amendment claim. And that means that means that this Court cannot grant Richard a writ of habeas corpus unless he shows that the Michigan Court of Appeals' decision (1) is "based on" an "unreasonable determination of the facts" or (2) is "contrary to" Supreme Court precedent or (3) "involved" an "unreasonable application" of Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

To the extent that Richard claims that the introduction of his statements *before* Main and McDonald conducted a sweep of the apartment violated the Fifth Amendment, Richard has not cleared § 2254(d). The precedent on point is *New York v. Quarles*, 467 U.S. 649 (1984). There,

the Supreme Court held that even though the defendant was handcuffed, the officer's question about where in the supermarket the defendant had left his gun fell within the public-safety exception to the Fifth Amendment's protection against self-incrimination. *Id.* at 659–660. The Court explained, "we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety." *Id.* at 656. Here, both Main and McDonald testified that their initial questions to Richard were, at least in part, prompted by safety concerns. Main said that he asked Richard if there was anyone else in the apartment "[t]o see if there was anybody else we needed to be concerned about." (ECF No. 14, PageID.281.) And McDonald said that one reason Richard was asked whether there was anyone else inside was "[t]o find out if there was a suspect inside." (ECF No. 14, PageID.292.) So this Court cannot say it was unreasonable for the Michigan Court of Appeals to find that Richard's "un-Mirandized statements were made in response to the officer's questions asked for safety reasons," 2012 WL 832807, at *3. Section 2254(d) thus bars Richard's claim based on the statement he made before Main and McDonald conducted a sweep of the apartment.

That leaves the introduction of Richard's statements after the sweep. With respect to these statements, Richard has arguably shown that the Michigan Court of Appeal's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). It is true, as the Michigan Court of Appeals stated, that Richard admitted during the *Walker* hearing that he understood his *Miranda* rights. But Richard's admission is tied to being read his *Miranda* rights two hours after the officers arrived on scene. (*See* ECF No. 14, PageID.302 ("I was in the back of the patrol car.").) In other words, while Main and McDonald testified that Richard was Mirandized minutes after their arrival on scene, Richard

did not recall that. (ECF No. 14, PageID.302.) Instead, Richard told the trial judge at the *Walker* hearing, "I was advised of *Miranda* like two hours after I was handcuffed." (ECF No. 14, PageID.305.) Indeed, when Richard conceded that he understood his *Miranda* rights, it was in response to a line of questioning that began, "you know there's some dispute about when the *Miranda* rights were give to you. But you recall being advised of your *Miranda* rights?" (ECF No. 14, PageID.304.) So Richard's admission that he understood his *Miranda* rights does not undermine his claim that his statements to Main and McDonald should have been suppressed. Arguably then, the Michigan Court of Appeals was unreasonable to reject Richard's Fifth Amendment claim "based on" Richard's admission that he understood his *Miranda* rights. 28 U.S.C. § 2254(d)(2).

But even assuming that Richard's claim based on his post-sweep statements could clear § 2554(d)'s bar to relief, § 2254(e)(1) would remain.[1] And that provision of AEDPA states, "a determination of a factual issue made by a State court shall be presumed to be correct[;] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Here, in the fact section of its opinion, the Michigan Court of Appeals stated, "Sergeant Mickens arrived at the scene, and Officers McDonald and Main entered the apartment building to investigate the crime scene. The officers then returned to the porch and read [Richard] his *Miranda* rights. [Richard] agreed to speak with the officers, and subsequently gave the police multiple versions of what transpired." *Richard*, 2012 WL 832807, at *1. This statement about when Richard was given his *Miranda* rights is supported by both Main and McDonald's testimony. (ECF No. 14, PageID.292–293, 363.) And Richard's contrary testimony is not "clear and convincing evidence"

---

[1] The Court notes that it has not received briefing on the issue of whether § 2254(e)(1) applies even if a petitioner has cleared § 2254(d)(2)'s bar to habeas corpus relief.

rebutting the two officers' accounts. So this Court must accept as true that "[t]he officers then returned to the porch and read defendant his *Miranda* rights." *See* 28 U.S.C. § 2254(e)(1).

That fact coupled with the law prevents this Court from granting Richard a writ based on the introduction of the statements he made to Main and McDonald after they checked the inside of the rooming house. In *Colorado v. Connelly*, 479 U.S. 157 (1986), Francis Connelly approached a police officer and "without any prompting, stated that he had murdered someone and wanted to talk about it." *Id.* at 160. The officer advised Connelly of his *Miranda* rights but, even so, Connelly insisted on talking. *Id.* A short while later, a detective arrived on scene and also advised Connelly of his rights; undeterred, Connelly confessed that he had murdered a girl in Denver in 1982. *Id.* At a hearing on Connelly's motion to suppress the statements, an expert testified that since at least the day before his confession, Connelly had been suffering from schizophrenia and was "in a psychotic state." *Id.* at 161. The Supreme Court held that even if Connelly's mental condition was compromised, neither the Due Process Clause nor the Fifth Amendment were grounds for suppressing his confession. *See id.* 167, 170–71. The Court explained in part, "The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. . . . *Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that. [Connelly's] perception of coercion flowing from the 'voice of God,' however important or significant such a perception may be in other disciplines, is a matter to which the United States Constitution does not speak." *Id.* at 170–71. Because the police had made no attempt to take advantage of Connelly's mental condition—indeed, the detective "perceived no indication whatsoever that [Connelly] was suffering from any kind of mental illness," *id.* at 161—the Fifth Amendment was not implicated. *Id.* at 169.

Here, given the Michigan Court of Appeals' determination of when Richard was Mirandized, Richard cannot establish "government coercion leading [him] to surrender rights protected by the Fifth Amendment," *Connelly*, 479 U.S. at 170. As noted, the state appellate court thought that McDonald had Mirandized Richard after the two officers searched the apartment. This was within ten or so minutes of arriving on scene. (ECF No. 14, PageID.282, 293, 362.) And, under McDonald's account at least, he gave Richard his *Miranda* rights as soon as Richard started to inculpate himself. (ECF No. 14, PageID.263.) As for the possibility that Main and McDonald took advantage of Richard's intoxication, *see Garner v. Mitchell*, 557 F.3d 257, 262 n.1 (6th Cir. 2009) (en banc), Main testified that he did not notice any signs that Richard was intoxicated (ECF No. 14, PageID.283). And while McDonald at least acknowledged Richard's intoxication, he also testified that he thought Richard was "slightly" intoxicated, that he did not notice slurred speech, that Richard was responsive to questions, and that it seemed as though Richard understood the questions. (ECF No. 14, PageID.229, 294, 362.) The 911 call, at least from the trial court's perspective, was inconclusive as to Richard's level of intoxication. (ECF No. 14, PageID.307 ("[Richard] may have been mildly incoherent but even . . . the 911 call[] is hard to discern whether there's a problem with the phone or with your client.").) So from Main and McDonald's perspective, Richard was capable of intelligently, knowingly, and voluntarily waiving his *Miranda* rights. *See Garner*, 557 F.3d at 262 ("'[T]he knowledge of the police is vital. If they have no reason . . . to think that the suspect doesn't understand them, there is nothing that smacks of abusive behavior.'" (quoting *Rice v. Cooper*, 148 F.3d 747, 750–51 (7th Cir. 1998)). And while Richard states (for the first time in his reply brief) that the officers were "shouting questions in his face" (ECF No. 15, PageID.729), he does not say how long they were shouting for, what they were shouting about, or that he felt compelled to respond to their shouting. In all, Richard has not shown

that Main and McDonald engaged in a "'calculated, conscious effort to extract a decision [from Richard] that [was] not the product of a rational choice.'" *Garner*, 557 F.3d at 263 (quoting *Rice*, 148 F.3d at 750–51).

And even assuming that Main and McDonald did take advantage of Richard's intoxication, *see Garner*, 557 F.3d at 262 n.1, Richard has not shown how the admission of his statements after Main and McDonald searched the apartment prejudiced him to the extent necessary for a writ of habeas corpus. To be entitled to the writ, the introduction of the post-sweep statements must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993); *Wagle v. Sherry*, 687 F. App'x 487, 492 (6th Cir. 2017) (applying *Brecht* to a Fifth Amendment claim). Here, McDonald told the jury that before they went inside the rooming house, Richard had given three different accounts of what had occurred—some asserting self-defense, some asserting that another person had killed Betty. (*See* ECF No. 14, PageID.361 ("Q. . . . [A]ll those three statements are made within the first one to two minutes, right? A. Yes.").) So the jury had reason to doubt Richard's claim of self-defense based solely on the statements within the public-safety exception. True, some of what Richard told the officers after their search of the apartment differed from what he told them before. (*See* ECF No. 14, PageID.363 (recounting Richard's statement that the knife was his); ECF No. 14, PageID.359 (recounting Richard's statement that the blood was his).) But Richard has not explained how these statements had a significant impact on the jury in light of the other evidence at trial, including the statements that fell within the public-safety exception.

Regarding prejudice, Richard does argue that had his statements been suppressed, he may have elected to pursue a defense theory other than self-defense. But Richard was found covered in blood and has not shown to this Court that there were other suspects that a rational juror would

seriously consider as the culprit. Being found at the scene with the body and without other likely suspects pointed toward a self-defense theory even if Richard's statements to Main and McDonald had been suppressed. Moreover, it appears that something other than a self-defense theory would have only been viable if Richard could suppress *all* his statements about killing Betty—including those within the public-safety exception.

In sum, to the extent Richard's Fifth Amendment claim is premised on statements he made to Main and McDonald *before* their sweep of the apartment, § 2254(d) prevents this Court from granting a writ of habeas corpus. And to the extent the claim is premised on statements Richard made to Main and McDonald *after* their sweep of the apartment, § 2254(e)(1) requires the Court to take as true the Michigan Court of Appeals' factual determination that Richard was Mirandized shortly after the sweep (as opposed to two hours later); given that factual determination, Richard has either not shown a Fifth Amendment violation or, if he has, that the violation prejudiced his case to the extent required for a  writ of habeas corpus.

**B.**

The Court now turns to Richard's three claims about trial counsel's ineffectiveness that he exhausted in the state court.

**1.**

Richard first says that trial counsel should have placed more emphasis on his severe intoxication, including by presenting an expert on intoxication. Apparently, Richard's counsel had at one point planned to call such an expert (the state had even provided funding for one). But the day before the *Walker* hearing, she changed her mind. (ECF No. 1, PageID.12.) Richard believes that a greater emphasis on intoxication would have persuaded the jury that he lacked the requisite *mens rea* and would have strengthened his motion to suppress. He says that the expert, a professor,

would have also been able to opine on Betty's state of mind as Betty was also heavily intoxicated.

(ECF No. 1, PageID.12.)

The Michigan Court of Appeals mostly addressed this claim. Here is what it said:

> Defendant also contends that his trial counsel was ineffective because she failed to call an expert witness on intoxication. The trial court appointed a pharmacology expert, but defendant's trial counsel elected not to call this expert. However, defendant's trial counsel elicited testimony from numerous witnesses that defendant was intoxicated on the night in question. Thus, in light of the evidence that was already before the jury, defendant fails to overcome the presumption that trial counsel's failure to call the pharmacology expert constituted sound trial strategy. Moreover, defendant fails to demonstrate a reasonable probability that, but for his trial counsel's failure to call a pharmacology expert, the result of his trial would have been different.

*People v. Richard*, No. 300469, 2012 WL 832807, at *3 (Mich. Ct. App. Mar. 13, 2012) (emphasis added).

That was an "on the merits" determination on most of Richard's claim that his trial counsel was ineffective for not adequately pursuing a defense based on severe intoxication. That means that § 2554(d) governs most of this claim. (The Court revisits the "most of" qualifier below.)

And Richard has not cleared § 2254(d)'s bar to relief. The Michigan Court of Appeals identified the correct Supreme Court precedent, *Strickland v. Washington*, 466 U.S. 668 (1984), and recited *Strickland*'s test correctly. *See Richard*, 2012 WL 832807, at *1 (quoting *People v. Yost*, 749 N.W.2d 753, 783 (Mich. Ct. App. 2008)). And the Michigan Court of Appeals' factual finding that Richard's intoxication was brought up with "numerous witnesses" was also reasonable. (*See e.g.*, ECF No. 14, PageID.337, 362, 388, 397, 408, 410.) So that leaves Richard with showing that the Michigan Court of Appeals unreasonably applied *Strickland*. Under *Strickland*, a deliberate, strategic choice—such as counsel's decision to not pursue a defense of which she is aware—is not lightly second-guessed. *Strickland*, 466 U.S. at 689. And here, Richard has not shown that an intoxication expert would have convincingly opined that he lacked the

necessary *mens rea* or that his statements to the police were not intelligent, knowing, and voluntary. So this Court cannot say that the Michigan Court of Appeals was unreasonable in finding that trial counsel made a reasonable strategic decision to not use the intoxication expert.

The Court now addresses the qualifier. The Michigan Court of Appeals apparently did not address (expressly anyway) Richard's claim that counsel should have called an intoxication expert at the *Walker* hearing. But if the Michigan Court of Appeals did not address that claim, that is largely Richard's fault (or his appellate counsel's). A review of the brief submitted to the Michigan Court of Appeals indicates that Richard did not make that specific argument—or at least clearly. (*See* ECF No. 14, PageID.535 (referencing counsel's failure to call expert "at trial"), ECF No. 14, PageID.546 ("[F]or reasons unknown, counsel abandoned this expert at trial.").) So, arguably, the claim is not exhausted and is defaulted.

But even if Richard properly raised the claim and the Michigan Court of Appeals failed to address it, Richard would not be entitled to a writ of habeas corpus. At the *Walker* hearing, the trial judge heard Richard's testimony that he had drunk a "fifth" of 100 proof bourbon. It is not clear what the intoxication expert might have said about Richard's cognitive ability that the trial judge could not already infer from the fact that Richard had allegedly consumed a massive amount of alcohol. Nor is it clear that the expert's opinion on the effects of a fifth of bourbon would have mattered to the trial judge. This is because it appears that the trial judge simply found credible the two arresting officers' testimony that Richard was responsive and understood his *Miranda* rights. (*See* ECF No. 14, PageID.307.) Thus, even under *de novo* review, Richard has not shown that trial counsel's deliberate choice not to call an intoxication expert at the *Walker* hearing was constitutionally deficient performance or, if it was, that it was prejudicial. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Before leaving this claim, the Court briefly addresses one related claim. In replying to the Warden's opposition to his request for a writ, Richard argues that trial counsel should have called Robert Walker and Xavier Garcia to testify at the *Walker* hearing. Richard claims that had the state trial court heard Walker's and Garcia's testimony, it would have suppressed the statements he made to the arresting officers. (ECF No. 15, PageID.727.) In his brief to the Michigan Court of Appeals, Richard did not make this specific argument. (*See* ECF No. 14, PageID.530–555.) So the claim is unexhausted and, for reasons provided above, defaulted. And even if not, other than noting that Garcia would have testified that Richard was drunk, Richard has not explained how Walker and Garcia would have aided his motion to suppress. In fact, at trial, Walker and Garcia were called as prosecution witnesses. Given that Richard has not shown that these witnesses' testimony would have significantly strengthened his motion to suppress, this Court cannot say that Richard's trial counsel was constitutionally deficient for not calling them or if she had she called them, there was a reasonable probability of suppression.

In short, § 2254(d) bars most or all of Richard's claim that trial counsel should have pursued an intoxication defense further. And to the extent that § 2254(d) does not apply to a portion of that claim, Richard has not established a constitutional violation under *Strickland*.

**2.**

Richard next claims that his trial counsel was ineffective because she did not investigate, call, or subpoena witnesses that would have been favorable to him, including his Alcoholics Anonymous sponsor. Richard believes that his Alcoholics Anonymous sponsor would have testified about his problems with drinking and, because his sponsor is African-American, his appearance would have mitigated racist statements Richard had allegedly made about the victim. (ECF No. 10, Br. in Support at 14.)

The Michigan Court of Appeals addressed this claim too:

> Defendant also asserts that his trial counsel was ineffective because she failed to call Sergeant Mickens and certain character witnesses. . . . Defendant argues that Sergeant Mickens' testimony might have undermined the veracity of Officers McDonald and Main's trial testimony.
>
> However, again, the record does not provide any indication of how Sergeant Mickens would have testified. Thus, defendant fails to establish the factual predicate necessary to support his claim that trial counsel was ineffective for failing to call Sergeant Mickens. . . .
>
> Similarly, while defendant claims that his trial counsel was ineffective for failing to call certain character witnesses, defendant does not identify these character witnesses or establish how they would have testified at trial. Clearly, defendant's claim lacks merit. Accordingly, we hold that defendant failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness.
>
> Furthermore, defendant has failed to demonstrate a reasonable probability that, but for his trial counsel's alleged failure to expose the alleged bias of the officers or to call Sergeant Mickens and certain character witnesses, the result of his trial would have been different.

*Richard*, 2012 WL 832807, at *1–2 (citations omitted, paragraphing altered).

That was an "on the merits" determination of Richard's claim about his trial counsel's failure to call witnesses in his favor. So § 2254(d) again applies.

And the Court cannot say that the Michigan Court of Appeals' assessment of trial counsel's performance was based on an unreasonable read of the trial record or an unreasonable application of *Strickland*. A review of Richard's brief to the Michigan Court of Appeals reflects that, other than Mickens, Richard did not name another witness that his counsel should have called at trial. Nor did Richard provide the Michigan Court of Appeals with an affidavit from any witness suggesting that their testimony would have been favorable to him. (ECF No. 14, PageID.530–555.) So, based on what Richard put before the state appellate court, that court did not unreasonably find that "defendant does not identify these character witnesses or establish how they would have testified at trial." *Richard*, 2012 WL 832807, at *2.

As for Mickens, it appears that the two primary arresting officers, Main and McDonald, had somewhat different accounts of what Richard said (e.g., whether Richard first stated that he stabbed the victim or whether Richard first stated that another man stabbed the victim). So Mickens might have been able to clarify what Richard said. But a review of the trial and *Walker* hearing transcripts suggest that Mickens did not arrive on scene until after Richard made his initial statements to Main. (ECF No. 14, PageID.291, 295, 362, 373, 389.) And Richard has not provided anything from Mickens (or other evidence) indicating that Mickens' take on what Richard said would have been more exculpatory than inculpatory. So this Court cannot say that the Michigan Court of Appeals was unreasonable in finding that trial counsel was not constitutionally deficient in failing to call Mickens.

Section 2254(d) bars this claim for a writ.

**3.**

Richard's last exhausted, ineffective-assistance claim is that his trial counsel did not adequately investigate or present enough evidence about his prior run-in with the two arresting officers, Main and McDonald. Richard believes these prior incidents gave the two officers reason to dislike him and offer biased testimony at trial, a bias his counsel should have brought out. Richard further claims that when he tried to testify about the details of his prior meetings with Main and McDonald, his trial counsel cut him off. (ECF No. 10, Br. in Supp. at 15.)

The Michigan Court Appeals rejected this ineffective-assistance claim as follows:

> Here, defendant claims that his trial counsel was ineffective because she failed to expose the alleged bias of Officers McDonald and Main. Yet, defendant failed to establish the factual predicate necessary to support this claim, because the record does not contain any evidence that the officers were biased against defendant. [*People v. Hoag*, 594 NW2d 57, 60 (Mich. 1999).] Accordingly, we hold that defendant failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. . . . Furthermore, defendant has failed to demonstrate a reasonable probability that, but for his trial counsel's alleged failure

to expose the alleged bias of the officers[,] . . . the result of his trial would have been different."

*Richard*, 2012 WL 832807, at *1–2.

That was an "on the merits" ruling that triggers § 2254(d)'s preconditions to habeas corpus relief.

And Richard has not shown that the Michigan Court of Appeals made unreasonable factual determinations or unreasonably applied *Strickland*. True, in his brief to the Michigan Court of Appeals, Richard argued that he had wanted to show that his prior run-ins with Main and McDonald "were numerous" and that he "had criticized [the officers'] response to drug activity in his neighborhood, causing them to be biased against him." (ECF No. 14, PageID.540.) And, argued Richard, the state trial court denied his post-trial motion for a *Ginther* hearing and thus prevented him from "introduc[ing] prior police reports," "run sheets," and other "proof that he had complained about the officers." (ECF No. 14, PageID.541; *see also* ECF No. 14, PageID.440, 550–551.) But these arguments were largely unsupported with evidence. The affidavit Richard provided to the Michigan Court of Appeals was entirely conclusory: "Defendant requested that his attorney cross examine the police officers who reported to the scene in order to expose their bias but she did not." (ECF No. 14, PageID.554.) And in his brief in support of his petition for habeas corpus, Richard identifies no evidence that (1) shows that Main or McDonald were biased *and* (2) was presented to the Michigan Court of Appeals. (*See* ECF No. 10, Br. in Supp. at 14–15.) So he has not shown that the Michigan Court of Appeals unreasonably found that "the record does not contain any evidence that the officers were biased against defendant." And because that factual determination was reasonable, it follows that the Michigan Court of Appeals reasonably concluded that Richard "failed to establish the factual predicate necessary to support this claim" of ineffective assistance.

Thus, § 2254(d) bars this claim for a writ of habeas corpus.

### III.

For the reasons given, the Court DENIES Richard's petition for a writ of habeas corpus. The Court does not believe that reasonable jurists would debate this Court's finding that Richard's claims are defaulted, barred by § 2254(d), or otherwise do not entitle him to a writ. So the Court will not issue a certificate of appealability. But if Richard still chooses to appeal the Court's decision, he may proceed in forma pauperis on appeal. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: May 17, 2019

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, May 17, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager